IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLASS PRODUCE GROUP, LLC,

    *Plaintiff*,

v.

HARLEYSVILLE WORCESTER
INSURANCE COMPANY,

    *Defendant*.

Civil Action No. ELH-16-3431

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a motion for leave to file an amended complaint, submitted by Class Produce Group, LLC ("CPG"), plaintiff.

On August 15, 2016, CPG filed suit in the Circuit Court for Howard County against Harleysville Worcester Insurance Company ("Harleysville"). ECF 2. CPG alleges breach of contract and "Bad Faith Refusal to Pay Insurance Claim," pursuant to Md. Code (2013 Repl. Vol.), § 3-1701 of the Courts and Judicial Proceedings Article ("C.J."). *Id.*[1] Harleysville timely removed the case to this Court on October 12, 2016, based on diversity of citizenship. ECF 1, "Notice of Removal"; 28 U.S.C. § 1332.

A week later, on October 19, 2016, Harleysville moved to dismiss (ECF 7), pursuant to Fed. R. Civ. P. 12(b)(6), supported by a memorandum of law (ECF 7-1) (collectively, "Motion to Dismiss"). Plaintiff filed a combined opposition to the Motion to Dismiss and a cross motion

---

[1] CPG has incorrectly named the statutory cause of action that it raises pursuant to C.J. § 1307. "[T]he action…is for failure to act in 'good faith,' as opposed to an action for 'bad faith.'" *Cecilia Schwaber Trust Two v. Hartford Acc. & Indem. Co.*, 636 F. Supp. 2d 481, 486 (D. Md. 2009).

for partial summary judgment as to the breach of contract claim. ECF 24. It is supported by a memorandum of law (ECF 24-1) (collectively, "Cross Motion") and three exhibits. ECF 24-2 to ECF 24-4. Defendant filed a combined reply to the Motion to Dismiss and an opposition to the Cross Motion (ECF 27), supported by an exhibit. ECF 27-1. And, plaintiff replied to the Cross Motion (ECF 30), supported by exhibits. ECF 30-1 to ECF 30-4.

On January 4, 2017, Harleysville filed a motion to strike plaintiff's reply to the Cross Motion, or in the alternative, a motion for leave to file a surreply (ECF 31), supported by a memorandum of law (ECF 31-1) (collectively, "Motion to Strike"). Harleysville claims that in CPG's reply to the Cross Motion, CPG "added new affidavits, facts and legal arguments that were not previously raised in the Complaint or in the Plaintiff's Motion for Summary Judgment." ECF 31 at 1. On January 18, 2017, CPG submitted an opposition to the Motion to Strike. ECF 33.

Also on January 18, 2017, plaintiff filed a motion for leave to file a First Amended Complaint (ECF 32), supported by a memorandum of law (ECF 32-1) (collectively, "Motion to Amend").[2] As discussed, *infra*, CPG seeks leave to amend to add three rather simple factual allegations to the Complaint. Harleysville opposes the Motion to Amend, asserting undue delay, prejudice, and futility. ECF 34. CPG has replied. ECF 35.

No hearing is necessary to resolve the various motions. *See* Local Rule 105.6. For the reasons stated below, I shall grant the Motion to Amend. And, I shall deny, as moot, the Motion to Dismiss, the Cross Motion, and the Motion to Strike, as they are directed to the original Complaint.

---

[2] A copy of the proposed Amended Complaint (ECF 32-2), as well as a red-lined version of the proposed Amended Complaint (ECF 32-3), are attached to the Motion to Amend.

## I. Factual and Procedural Background[3]

CPG and its corporate affiliate[4] operate a business that processes produce and resells the produce to customers and "end users." ECF 2, ¶ 7. Harleysville sold CPG a Commercial Lines Insurance Policy, #MPA00000016598E (the "Policy"), which indemnifies CPG against loss "for various covered perils occurring at its facilities." *Id.*, ¶ 6. Portions of the Policy were docketed by CPG, with the Complaint, at ECF 2-1, and with the Cross Motion, at ECF 24-3 and ECF 24-4.

On September 14, 2012, CPG leased warehouse space located at 8441 Dorsey Run Road, Jessup, MD (the "Warehouse"). ECF 2, ¶ 8. On September 23, 2013, CPG and a neighboring tenant in the Warehouse experienced flooding in their premises because of a sewer line back-up. *Id.*, ¶ 14. CPG claims the flood was due to preexisting and latent defects in the drainage system, and "waste water backed up in the Warehouse Sewer System and into the Warehouse and its surrounding areas, causing CPG damage and loss." *Id.*, ¶ 11. According to CPG, the pipes were the wrong diameter, the pumps were "old, undersized, dilapidated and worn out," and grease traps were clogged. *Id.*, ¶ 9.

In order to investigate and repair the sewer line backup, CPG maintains that it had to install temporary water drainage facilities while it repaired the latent defects in the warehouse sewer system. *Id.*, ¶¶ 12-14. CPG alleges it spent a total of $338,475.42 on the temporary facilities, investigation, and repairs. *Id.*, ¶¶ 12-13. CPG also claims that it spent additional money cleaning up the Warehouse space. *Id.*, ¶ 14. However, CPG did not specify the cost of the clean-up effort.

---

[3] The factual allegations are derived from the Complaint. For the purposes of this Memorandum Opinion, it is unnecessary to review fully the allegations or the procedural history.

[4] CPG did not disclose the identity of the corporate affiliate in the Complaint.

3

On October 11, 2013, CPG sought indemnification from Harleysville under the Policy. *Id.*, ¶ 15. However, Harleysville denied coverage. *Id.*, ¶ 16; *see also* ECF 2-1 (letter dated October 23, 2013, from Harleysville denying coverage). Subsequent efforts by CPG in 2015 and 2016 to persuade Harleysville to reconsider its denial were unsuccessful. *Id.*, ¶¶ 18-21. This suit followed.

As noted, on October 19, 2016, Harleysville moved to dismiss the Complaint. ECF 7. Of import here, Harleysville argues that plaintiff's claim for breach of contract was not adequately pleaded because "though Plaintiff references the Insurance Policy, Plaintiff has neither quoted the Policy, nor have they attached a copy of the full Policy to the Complaint as an exhibit." ECF 7-1 at 15. Rather, according to Harleysville, "Plaintiff has simply made a bald allegation that Harleysville had a contractual obligation to indemnify for Class Produce's loss to its property caused by 'waste water' backing up through the Facility." *Id.* at 16 (quoting ECF 2, ¶ 23). In the Motion to Dismiss, Harleysville also argues that Maryland does not recognize a claim styled as a bad faith refusal to pay an insurance claim. ECF 7-1 at 17-21.

In the Cross Motion, CPG moves for summary judgment as to the breach of contract claim and opposes the Motion to Dismiss. ECF 24. Of significance, although Harleysville did not initially assert that CPG failed to exhaust administrative remedies, as required under C.J. § 3–1701, CPG acknowledged that such claims ordinarily are subject to an exhaustion requirement with the Maryland Insurance Administration. But, it contends that its claim falls within an exception to the exhaustion requirement because it involves a commercial insurance policy with limits that exceed $1,000,000. ECF 24-1 at 14-15; *see also* C.J. § 3-1701(c)(2)(iii), discussed *infra*.

4

In Harleysville's combined opposition to the Cross Motion and reply to the Motion to Dismiss (ECF 27), it argues, for the first time, that CPG's bad faith claim is subject to dismissal for failure to exhaust administrative remedies. It contends that CPG is incorrect that it did not need to exhaust administrative remedies prior to filing suit because "a number of the coverages asserted by the Plaintiff have applicable limits of liability that do not exceed one million dollars[.]" ECF 27 at 8. Harleysville explains: "Depending upon the coverage that is being sought, the applicable limit of the claim at issue might be as low as $25,000 for sewer back up coverage. Moreover, it appears that the maximum limits of the Policy for underground pipes coverage is $250,000." *Id.* at 7 (citation and internal quotation marks omitted).

The Policy includes a "Commercial Output Program Property Coverage Part." ECF 24-4. In a section titled "Supplemental Coverages," *id.* at 11, paragraph 11 is titled "Sewer Backup and Water Below the Surface." *Id.* at 14. It provides, *id.*:

> "We" cover direct physical loss caused by:
>
> a. water that backs up through a sewer or drain; or
>
> b. water below the surface of the ground, including but not limited to water that exerts pressure on or flows, seeps, or leaks through or into a covered building or structure, sidewalk, driveway, foundation, swimming pool, or other structure.
>
> The most "we" pay for loss caused by sewer backup and water below the surface in any one occurrence is $25,000.

In Paragraph 13, the Policy provides that the coverage limit for direct physical loss to an underground pipe is $250,000. ECF 24-4 at 14.

In its reply to the Cross Motion (ECF 30), CPG maintains that the Court should look to the "building" limit of the Policy, which exceeds one million dollars. CPG explains, *id.* at 14-15 (emphasis in original):

5

> [T]he "Tearing Out and Replacing" Other Coverage Section of Property Coverage Part (ECF No. 24-4 at 25, "Other Coverages" ¶ 2), provides coverage for CPG's remediation costs occasioned by water damage. ***Other than policy limits, this coverage is not limited to any dollar amount.*** The "Schedule of Coverages Commercial Output Program" of the…Policy, which is attached to this Reply Brief as Exhibit 4, lists the Building Property limit under the Property Coverage Part to be $15,750,584. This full policy limit (of indemnification) would apply to limit CPG' s recovery for its costs in remediating the water damage. Thus, CPG was free under the statute to bring its claims in Court without first bringing them before the [Maryland Insurance Administrator].[]

The "Schedule of Coverages Commercial Output Program" provides that the "Building Property Limit" is $15,750,584. ECF 30-4. However, the "Tearing Out and Replacing" section of the Policy does not contain a coverage limitation. It provides, in relevant part, ECF 24-4 at 25:

> When "we" cover buildings or structures and a loss caused by water, other liquids, powder, or molten material is covered, "we" also pay the cost of tearing out and replacing any part of the covered building or structure to repair damage to the system or appliance from which the water or other substance escapes.

As noted, plaintiff seeks to amend its Complaint to add three factual allegations. In particular, CPG seeks to add an allegation that "[t]he limit of insurance for property coverage under the Policy exceeds $1 million." ECF 32-3, ¶ 6. Plaintiff also seeks to add that it paid "$7,800.00" to clean up and restore the Warehouse and the neighboring tenant's property. *Id.*, ¶ 14. Finally, plaintiff seeks to add a citation to the particular contractual provisions of the Insurance Police at issue. *Id.*, ¶ 20 (citing "Commercial Output Program Property Coverage Part of the Policy" and Paragraph 2 of the Other Coverages Section, "Tearing Out and Replacing").

## II. Discussion

### A.

The Motion to Amend implicates Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires." *See Foman v. Davis*, 371

U.S. 178, 182 (1962); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); *Simmons v. United Mortgage & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court...." *Foman*, 371 U.S. at 182; *see also Booth v. Maryland*, 337 Fed. App'x 301, 312 (4th Cir. 2009) (per curiam). Indeed, *Foman*, 371 U.S. at 182, "mandates a liberal reading of the rule's direction for 'free' allowance: motions to amend are to be granted in the absence of a 'declared reason' 'such as undue delay, bad faith or dilatory motive...repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party...futility of amendment, etc.'" *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987); *see Booth*, 337 Fed. App'x at 312.

Plaintiff explains that it seeks to amend the Complaint, among other reasons, in response to defendant's argument that CPG has failed to "'fully identify in the Complaint these portions of the Policy under which coverage is being sought.'" ECF 32-1 at 4 (citing ECF 27 at 3). In addition, CPG argues that granting it leave to amend will not prejudice defendant. As CPG points out, ECF 32-1 at 5, discovery has not yet begun. Moreover, no scheduling order has been entered in this case, and thus the amendment would not affect any scheduling deadlines. CPG also notes that if the Court does not permit amendment, and grants the Motion to Dismiss, it would be time barred from refiling the Complaint. *Id.* at 5.

In its Opposition, defendant urges denial of the Motion to Amend, claiming undue delay by CPG in moving to amend, and arguing that permitting the amendment would prejudice Harleysville. ECF 34 at 4. Both contentions are devoid of merit.

Defendant asserts, *id.*:

Class Produce did not avail itself of the opportunity to amend "as a matter of course" within twenty one days of service of a dispositive motion under Rule 12.

7

*See* Fed. R. Civ. P. 15(a)(1). By means of the Motion to Dismiss, Defendant was clearly challenging whether the Complaint was well pled. Rather than amend during that time, Class Produce chose to wait while other filing was taking place. The amendment would prejudice Defendant in that all outstanding briefing has been filed. If the amendment is permitted, the parties would have to undertake the effort and expense of refiling motions, oppositions and replies. Class Produce has not provided the Court with any reason why it did not avail itself of the earlier opportunity to amend, but waited until the conclusion of briefing.

And, as to the bad faith refusal to pay insurance claim, Harleysville argues that the amendment regarding the amount of the policy limitation is futile because plaintiff has still failed adequately to plead administrative exhaustion or an exception to the exhaustion requirement. ECF 34 at 4-5. Defendant asserts, *id.* at 5: "The Court should deny Plaintiff's request to add conclusory statements about the limits for the coverages asserted that are not borne out by the facts provided.[]" In addition Harleysville contends, *id.* at 6: "The facts related to exhaustion or the exception to exhaustion would have been known to Class Produce at the time the Complaint was filed and should not be permitted after all briefing has concluded."

In its Reply (ECF 35), plaintiff counters that its proposed amendment, that the limit of insurance for property coverage under the Policy exceeds $1 million, "is a factual allegation that must be taken as true at this stage of the case. If Harleysville contends this statement is not true, it must come forward with some evidence, either in response to a motion for summary judgment or at trial, that it is not true." *Id.* at 6. And, as to undue delay and prejudice, CPG states, *id.* at 3: "Despite Harleysville's suggestion to the contrary, CPG was under no obligation to amend its complaint immediately after Harleysville's Motion to Dismiss. Rule 15 permits a plaintiff to file *either* as a matter of course within a certain time *or* by seeking leave from the court to do so. CPG chose the latter." (Emphasis in original).

8

### B. Undue Delay

It is true that plaintiff did not move to amend within the 21-day window provided by Rule 15(a)(1). But, it is also true that plaintiff's failure to do so does not bar the Motion to Amend. The delay in seeking to amend was hardly lengthy. Defendant's Opposition on this basis strains credulity.

The case was removed to this Court in October 2016. By January 2017, CPG had moved to amend. In other words, CPG moved to amend within approximately three months of the removal to this Court. The delay was not undue.

It is noteworthy that no scheduling order has been entered and discovery has not yet begun. Routine scheduling orders generally permit a brief period of time in which to amend. Therefore, had a scheduling order been entered, CPG could have been allowed a period of time in which to amend. And, CPG seeks only to add a few factual supplements to clarify its claims; plaintiff does not seek to add a new legal theory or a new cause of action.

In any event, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (citation omitted); *see also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Delay alone however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."); *Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at *3 (D. Md. Sept. 10, 2015) ("Delay, however, 'cannot block an amendment which does not prejudice the opposing party.'") (quoting *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 421 (4th Cir.1990)). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Edwards*, 178 F.3d at 242 (citation omitted); *see Simmons, LLC*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *Nourison Rug*

*Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). None of these factors applies here.

### C. Bad faith

Defendant has not asserted bad faith on the part of CPG. Nor does the record reflect bad faith. Rather, CPG seeks to amend in order to respond to arguments raised by Harleysville in its Motion to Dismiss and in its opposition to the Cross Motion.

### D. Futility

#### 1.

An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citations omitted); *see also* Wright & Miller, § 1487 at 732-740 ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face,[ ] or that fails to include allegations to cure defects in the original pleading,[ ] should be denied."). A motion to amend can also be denied on the basis of futility where the proposed amendment "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *see also Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 Fed. Appx. 256, 267-68 (4th Cir. 2016) (per curiam) (affirming district court's denial of leave to amend on the basis of futility, because the amended complaint would not survive a motion to dismiss under Rule 12(b)(6)); *Moretz*, 898 F.2d at 420–21 ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

But, the review for futility "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, ... conjecture about the merits of the

litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis*, 615 F.2d at 613).

Leave to amend may be denied if a proposed amendment would not survive a motion to dismiss. *See*, *e.g.*, *Perkins*, 55 F.3d at 917. Therefore, I will briefly review the standard for dismissal under Rule 12(b)(6) and as well as Rule 12(b)(1), because "[a] motion to dismiss for failure to exhaust administrative remedies [in a case raising a claim pursuant to C.J. § 3-1701] challenges the Court's subject matter jurisdiction." *Carlyle v. Travelers Home & Marine Ins. Co.*, WDQ-13-2964, 2014 WL 2573381, at *3 (D. Md. June 5, 2014)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, –––– U.S. ––––, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading

standard for 'all civil actions'...." (citation omitted)); *see also Hall v. DirecTV, LLC*, __F.3d__, No. 15-1857, 2017 WL 361065, at *4 (4th Cir. Jan. 25, 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, __U.S. __, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736

F.3d 296, 300 (4th Cir. 2013). A factual challenge can also assert that other facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id.*

Harleysville brings a factual challenge because it argues that CPG failed to exhaust administrative remedies and because it refutes CPG's assertion that the limit of insurance for property coverage under the Policy exceeds $1 million.

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may...resolve the jurisdictional facts in dispute by considering evidence... such as affidavits.") (Citation omitted). But, where the jurisdictional allegations are inextricably intertwined with the facts central to the merits of the claim, the usual "presumption of truthfulness" should attach to the factual allegations of the complaint, and the court "should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits." *Kerns*, 585 F.3d at 193.

**2.**

Failure to act in good faith in denying insurance coverage, under C.J. § 3–1701 and its companion, Md. Code (2011 Repl. Vol.), § 27-1001 of the Insurance Article ("Ins."), is a State statutory cause of action that was created in 2007. *See* 2007 Md. Laws, ch. 150. Taken together, the two statutes require an insurer to make "an informed judgment based on honesty and

13

diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." C.J. § 3–1701(a)(5); Ins. § 27–1001(a) (same). The statutes authorize a cause of action against an insurer that fails to act in good faith in denying coverage, and authorize the insured to recover "actual damages," up to the limits of the applicable insurance policy, along with attorneys' fees, expenses, other litigation costs, and interest. C.J. § 3–1701(e).

A claim under C.J. § 3–1701 is ordinarily subject to an administrative exhaustion requirement with the Maryland Insurance Administration. *See* C.J. § 3–1701(c)(1); *see also* Ins. § 27–1001(c)–(g). However, there is an exception to the exhaustion requirement for claims on a "commercial insurance policy…with respect to which the applicable limit of liability exceeds $1,000,000," C.J. § 3–1701(c)(2)(iii). As noted, CPG claims the exception applies here.

Harleysville argues that the proposed amendment related to the amount of the policy limitation, *i.e.*, that the limit of insurance for property coverage under the Policy exceeds $1 million, should be denied as futile. ECF 34 at 4.[5] According to Harleysville, the limits of the applicable portions of the Policy, "the Sewer Backup and Underground Pipes portions," are "$25,000 and $250,000 respectively, and do not exceed one million dollars, and would require Plaintiff to exhaust administrative remedies." *Id.* at 5. Although Harleysville acknowledges that CPG has argued that the Court should look to the building limit of the Policy, which exceeds one million dollars, it contends that "Plaintiff…has not demonstrated that the building limit applies to its claims." *Id.* at 5, n. 2. Harleysville concludes, *id.* at 5: "The Court should deny Plaintiff's request to add conclusory statements about the limits for the coverages asserted that are not borne out by the facts provided.[]"

---

[5] Defendant does not argue that the two other proposed amendments are futile.

In its Reply, CPG denies that it is required, at this stage of litigation, to "prove" that the building limit applies to its claim. ECF 35 at 6 (emphasis in original). CPG argues that its proposed amendment, that "'[t]he limit of insurance for property coverage under the Policy exceeds $1 million'", constitutes "a factual allegation that must be taken as true at this stage of the case. If Harleysville contends this statement is not true, it must come forward with some evidence, either in response to a motion for summary judgment or at trial, that it is not true." *Id.* at 6 (citation omitted, alteration in original).

And, as noted, in its reply to the Cross Motion (ECF 30), CPG argues that the building limit of the Policy, which exceeds one million dollars, is applicable to its claims, for the following reasons, *id.* at 14-15 (emphasis in original):

> [T]he "Tearing Out and Replacing" Other Coverage Section of Property Coverage Part (ECF No. 24-4 at 25, "Other Coverages" ¶ 2), provides coverage for CPG's remediation costs occasioned by water damage. ***Other than policy limits, this coverage is not limited to any dollar amount.*** The "Schedule of Coverages Commercial Output Program" of the CGL Policy, which is attached to this Reply Brief as Exhibit 4, lists the Building Property limit under the Property Coverage Part to be $15,750,584. This full policy limit (of indemnification) would apply to limit CPG' s recovery for its costs in remediating the water damage. Thus, CPG was free under the statute to bring its claims in Court without first bringing them before the [Maryland Insurance Administrator].[]

In other words, CPG contends that it is entitled to coverage under the "Tearing Out and Replacing" section of the Policy for its remediation costs caused by water damage. Because this section does not contain a coverage limitation, CPG maintains that the coverage limitation of the "Building Property Limit" of the Policy applies. And, because this limit exceeds one million dollars, CPG concludes that it was not required to exhaust administrative remedies prior to filing suit. C.J. § 3–1701(c)(2)(iii)

Ultimately, whether CPG was required to exhaust administrative remedies prior to filing a claim pursuant to C.J. § 3-1701 depends on whether the building limit of the Policy exceeds

one million dollars (ECF 30-4), as CPG claims. This issue has not been fully briefed. Indeed, Harleysville first raised the argument that CPG's statutory claim is subject to dismissal for failure to exhaust administrative remedies in its combined opposition to the Cross Motion and reply to the Motion to Dismiss. ECF 27 at 8. In its Opposition to the Motion to Amend, Harleysville devoted a mere conclusory footnote to its contention that CPG "has not demonstrated that the building limit applies to its claims." ECF 34 at 5, n. 2. It provides no argument as to the basis for the contention.

In my view, it is premature to conclude, without the benefit of complete briefing on the issue, that plaintiff's argument as to the building limit of the Policy is "so clearly insufficient or frivolous on its face as to be futile." *Brightwell*, DKC-11-3278, 2015 WL 5315757, at *5.

### E. Prejudice

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "the party opposing amendment. *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 3:10-cv-103, 2010 WL 2929612, *4 (E.D. Va. July 23, 2010). "[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." Wright & Miller, § 1487 at 701.

In *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), the Court said: "'Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.... [T]he further the case progressed before judgment was

16

entered, the more likely it is that the amendment will prejudice the defendant....'" (quoting *Laber*, 438 F.3d at 427) (alteration in *Laber*). To be sure, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). In contrast, "[a]n amendment is not prejudicial ... if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. Therefore, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

Defendant claims that it will be prejudiced if plaintiff is allowed to amend because various motions are now fully briefed. It states: "If the amendment is permitted, the parties would have to undertake the effort and expense of refiling motions, oppositions and replies." ECF 34 at 4. However, "the time, effort, and money…expended in litigating [a] case" do not constitute "substantial prejudice." *Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc.*, No. 4:05-CV-0033, 2006 WL 1289545, at *3 (M.D. Pa. May 9, 2006) (citation omitted); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2nd Cir. 1993) (concluding that district court did not abuse its discretion in granting defendants leave to amend their answer to raise limitations defense and concluding that the time, effort, and money expended by the plaintiffs in litigating the case did not arise to substantial prejudice).

At this early stage in the litigation, permitting CPG to amend the complaint will not prejudice Harleysville. Notably, defendant was not obligated to oppose the Motion to Amend. Given the posture of the case, the spirit of Rule 15(a), and the limited nature of the proposed

amendments, defendant could have decided that an opposition was unwarranted. Defendant certainly cannot blame CPG for the time it expended in opposing the Motion to Amend.

Harleysville may choose to file a motion to dismiss directed to the amended complaint. Filing a new motion to dismiss would entail some effort and expense. But, given the relatively minor nature of the three proposed amendments, Harleysville could "presumably 'tweak [its original] Motion to Dismiss'…" and related pleadings. *Sennott v. Adams*, No. 6:13-CV-02813-GRA, 2014 WL 2434745, at *3 (D.S.C. May 29, 2014) (citation omitted); *see id.* (finding no prejudice to defendants, even though there was a fully briefed motion to dismiss pending before plaintiff filed the motion to amend its complaint, where "the original Complaint and the Proposed Amended Complaint differ slightly, but these changes supplement Plaintiff's claims against Defendants").

### III.    Conclusion

For the foregoing reasons, I shall grant the Motion to Amend. Therefore, I shall deny, as moot, the Motion to Dismiss, the Cross Motion, and the Motion to Strike, as they are directed to the original Complaint.

An Order follows.


Date: May 31, 2017                                         /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge