IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLASS PRODUCE GROUP, LLC,

    *Plaintiff*,

v.

    Civil Action No. ELH-16-3431

HARLEYSVILLE WORCESTER
INSURANCE COMPANY,

    *Defendant*.

## MEMORANDUM OPINION

Plaintiff Class Produce Group, LLC ("CPG") has sued Harleysville Worcester Insurance Company ("Harleysville"), its insurer. The Amended Complaint (ECF 38) contains two counts: breach of the parties' insurance contract (Count 1) and "Bad Faith Refusal to Pay Insurance Claim" (Count 2). *Id.*[1]

Two motions are currently pending. The first is Harleysville's motion to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF 39. The motion to dismiss is supported by a memorandum of law (ECF 39-1) (collectively, the "Motion") and one 242-page exhibit. CPG opposes the Motion. ECF 42 ("Opposition"). Harleysville has replied. ECF 45 ("Reply").

Thereafter, CPG moved for leave to file a surreply to Harleysville's Reply. ECF 49. That motion is supported by a memorandum of law (ECF 49-1) (collectively, "Motion for

---

[1] The suit was initially filed in in the Circuit Court for Howard County. ECF 2 (Complaint). Harleysville removed the action to federal court on the basis of diversity of citizenship. *See* ECF 1 (Notice of Removal), ¶ 5. In a prior Memorandum Opinion (ECF 36) and Order (ECF 37), I granted CPG's motion for leave to file an Amended Complaint. *See* ECF 32.

Surreply"), as well as the proposed surreply. *See* ECF 49-2. Harleysville opposes the Motion for Surreply. ECF 52. CPG replied. ECF 53.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion for Surreply, and I shall grant the Motion in part and deny it in part.

## I. Factual and Procedural Background[2]

CPG and its corporate affiliate[3] operate a business that processes produce and resells the produce to customers and "end users." ECF 38, ¶ 7. Harleysville sold CPG a Commercial Lines Insurance Policy, #MPA00000016598E (the "Policy"), which indemnifies CPG against loss "for various covered perils occurring at its facilities." *Id.* ¶ 6. CPG alleges that the "limit of insurance for property coverage under the Policy exceeds $1 million." *Id.* Portions of the Policy were included with the original Complaint. *See* ECF 2-1. Harleysville has also included portions of the Policy with the Motion. *See* ECF 39-2.

On September 14, 2012, CPG leased warehouse space located at 8441 Dorsey Run Road in Jessup, Maryland (the "Warehouse"). ECF 38, ¶ 8. About a year later, on September 23, 2013, CPG and a neighboring tenant in the Warehouse experienced flooding in their premises when waste water backed up in the Warehouse's sewer system ("Sewer Line Back-Up"). *Id.* ¶ 14. CPG claims the flood was due to preexisting and latent defects in the drainage system, causing waste water to back up "in the Warehouse Sewer System and into the Warehouse and its

---

[2] The factual allegations are derived from the Amended Complaint. In view of the procedural posture of the case, I must accept as true the facts alleged in the Amended Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). And, I may consider documents attached to the original Complaint and incorporated by reference into the Amended Complaint. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

[3] CPG did not disclose the identity of the corporate affiliate in the Amended Complaint.

surrounding areas," resulting in "damage and loss" to CPG. *Id.* ¶ 11. According to CPG, the pipes were the wrong diameter, the pumps were "old, undersized, dilapidated and worn out," and grease traps were clogged. *Id.* ¶ 10.

In order to investigate and repair damage from the Sewer Line Back-Up, CPG maintains that it had to install temporary water drainage facilities while it repaired the latent defects in the Warehouse's sewer system. *Id.* ¶¶ 12-14. CPG alleges that it spent a total of $338,475.42 on the temporary facilities, investigation, and repairs. *Id.* ¶¶ 12-13. CPG also claims that it spent $7,800 to clean up and restore the space. *Id.* ¶ 14. CPG does not explain why it, rather than its landlord, was required to pay for the repairs.

On October 11, 2013, CPG sought indemnification from Harleysville under the Policy for losses stemming from the Sewer Line Back-Up. *Id.* ¶ 15. However, Harleysville denied coverage by letter of October 23, 2013. *Id.* ¶ 16; *see also* ECF 2-1 ("Denial Letter").

In the Denial Letter, Harleysville recounted that it had retained an inspector, Dave Blanch, to inspect the Warehouse. ECF 2-1 at 1. Blanch "walked the property with [plaintiff] in order to better understand the way the waste drainage system works." *Id.* It appears from the Denial Letter that Blanch observed that "the waste water enters [an underground storage] tank through a three inch drain line, [but] the waste water exits this tank through a one and one half inch line, which is of inadequate size to drain the volume of waste water that [CPG's] business operations require." *Id.* at 1-2.

Based on Blanch's report, Harleysville determined that it would "be unable to make any payment for costs that may be incurred to permanently fix the inadequate waste line drainage issue" because "the [P]olicy excludes loss or damage caused by . . . defects, errors, or omissions in property." *Id.* at 3-4. Harleysville cited a portion of the Policy that states, *id.* at 3: "'We' do

not pay for loss or damage caused by or resulting from a defect, weakness, inadequacy, fault, or unsoundness in materials." Defendant cited similar provisions in the "Commercial Output Program Property Coverage Part" of the Policy. *Id.* at 4-5. Notably, CPG does not appear to have responded to the Denial Letter, and it does not dispute the facts of Blanch's inspection.

More than two years later, on December 7, 2015, CPG asked Harleysville to reconsider its denial of coverage. ECF 38, ¶ 18; *see* ECF 2-2 (letter of December 7, 2015, from CPG to Harleysville). Ten days later, Harleysville replied, denying reconsideration but requesting additional information about certain elements of the claim. ECF 38, ¶ 19; *see* ECF 2-3 (letter from Harleysville to CPG, dated December 17, 2015).

Several months thereafter, on May 20, 2016, CPG responded to the letter of December 17, 2015, with additional information, and citing specific provisions of the Policy which, according to CPG, supported its claim for indemnification. ECF 38, ¶ 20; *see* ECF 2-4 (letter dated May 20, 2016, from CPG to Harleysville). In July 2016, Harleysville replied, again denying coverage. ECF 38, ¶ 21; *see* ECF 2-5 (letter from Harleysville to CPG, dated July 8, 2016). This suit followed. ECF 2.

Harleysville moved to dismiss the Complaint. ECF 7. In a cross-motion, CPG moved for summary judgment as to the breach of contract claim and opposed the motion to dismiss. ECF 24. Once the motions were fully briefed, CPG moved to file its Amended Complaint, adding several factual allegations but leaving Count 1 and Count 2 unaltered. ECF 32. I granted the motion to amend, which rendered moot both Harleysville's motion to dismiss and CPG's motion for summary judgment. ECF 36 (Memorandum Opinion); ECF 37 (Order).

CPG asserts two claims against Harleysville in the Amended Complaint. The first, for breach of contract, alleges that Harleysville failed to abide by the terms of the Policy when it

denied coverage for the Sewer Line Back-Up. ECF 38, ¶¶ 22-25. Count 2 is titled as a claim for "Bad Faith Refusal to Pay Insurance Claim." CPG alleges that Harleysville breached its statutory duty under Md. Code (2013 Repl. Vol., 2017 Supp.), § 3-1701 of the Courts & Judicial Proceedings Article ("C.J."), "to investigate in good faith." ECF 38, ¶ 27. Further, it claims that defendant acted in "bad faith, refused to honor its insurance contract obligation by failing to properly investigate CPG's claim, by failing to reconsider its blanket coverage denial when presented with additional information, and by consistently relying on an improper and incomplete coverage denial." *Id.* ¶ 28.

Harleysville subsequently renewed its Motion. ECF 39. In particular, pursuant to Fed. R. Civ. P. 12(b)(6), Harleysville claims that both Count 1 and Count 2 fail to state a claim (*id.* at 17-18; 18-23). In addition, under Rule 12(b)(1), it contends that Count 2 is subject to dismissal for failure to exhaust administrative remedies. *Id.* at 20-26.

## II. Legal Standards

### A. Rule 12(b)(1)

Defendant asserts that under the applicable Maryland statutes, C.J. § 3-1701 and Md. Code (2017 Repl. Vol.), § 27-1001 of the Insurance Article ("Ins."), CPG was required to exhaust administrative remedies as to Count 2, by first presenting its claim of lack of good faith to the Maryland Insurance Administration ("MIA"). ECF 39 at 23-24. In its view, CPG's claim does not fall under one of the three exceptions to this requirement. *Id.* As a result, Harleysville maintains that this Court lacks subject matter jurisdiction over Count 2. *Id.* at 23.

Failure to exhaust administrative remedies may give rise to a challenge to a federal court's subject matter jurisdiction. Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter

jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id*. Harleysville brings a factual challenge because it argues that CPG failed to exhaust its administrative remedies with regard to Count 2. ECF 39 at 23-24.

In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

**B. Rule 12(b)(6)**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to

satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)

(en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting

allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

Here, CPG attached to its Complaint correspondence between it and Harleysville. ECF 2-1 to 2-5. Although these exhibits were not attached to the Amended Complaint, they are incorporated by reference. Additionally, Harleysville attached a significant portion of the Policy to its Motion. ECF 39-2. Therefore, the Policy and the exhibits were incorporated by reference. *Goines*, 822 F.3d at 167. Accordingly, I shall consider them.

### C. Choice of Law

As noted, this case was removed to this Court from the Circuit Court for Howard County. ECF 1. Jurisdiction is founded on diversity of citizenship. ECF 1, ¶ 5. The two counts in the Amended Complaint are state-law claims, one of which arises from a Maryland statute. ECF 38 at 5-6.

"When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). *See also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n. 13 (D. Md. 2011). Maryland is, of course, the forum state.

As to contract claims, Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g., Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58

A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). The Amended Complaint alleges that the "the causes of action provided for herein arose in Maryland" (ECF 38, ¶ 1), and defendant does not argue otherwise. Therefore, I shall apply Maryland law.

### D. Principles of Contract Interpretation

Because CPG alleges claims founded in contract, it is helpful to review the principles of contract formation and contract interpretation under Maryland law.

In general, a contract is defined as "a promise or set of promises for breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Richard A. Lord, 1 *Williston on Contracts* § 1:1, at 2-3 (4th ed. 1990); *accord* Restatement (Second) Contracts § 1, at 5 (1981); *see also Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 421-22, *cert. denied*, 393 Md. 478, 903 A.2d 416 (2006). "'A contract is formed when an unrevoked offer made by one person is accepted by another.'" *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377, 941 A.2d 1181, 1209 (2008) (quoting *Prince George's County v. Silverman*, 58 Md. App. 41, 57, 472 A.2d 104, 112 (1984)). Thus, mutual assent is an integral component of every contract. *See, e.g.*, *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007); *Advance Telecom Process LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177, 119 A.3d 175, 183 (2015).

"In determining whether there was an enforceable contract, [courts] began [the] analysis by discussing the essential prerequisite of mutual assent to the formation of a contract . . . ." *Falls Garden Condo. Ass'n, Inc. v. Falls Homeowners Ass'n, Inc.*, 441 Md. 290, 302, 107 A.3d 1183, 1189 (2015); *see also Mitchell v. AARP*, 140 Md. App. 102, 116 (2001) ("An essential element with respect to the formation of a contract is 'a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the

11

parties must be in agreement as to its terms.'" (citations omitted)). "Manifestation of mutual assent includes two issues: (1) intent to be bound, and (2) definiteness of terms." *Cochran*, 398 Md. at 14, 919 A.2d at 708.

A contract may be oral or written, as well as express or implied. "'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706, 114 A.3d 676, 688 (2015) (quoting *Cnty. Comm'rs of Caroline Cnty. v. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94, 747 A.2d 600, 606 (2000)). Whether oral or written, a contract must express with certainty the nature and extent of the parties' obligations and the essential terms of the agreement. *Forty W. Builders, Inc.*, 178 Md. App. at 377-78, 941 A.2d at 1209-10; *see Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866, 871 (1974). If an agreement omits an important term, or is otherwise too vague or indefinite with respect to an essential term, it is not enforceable. *Mogavero v. Silverstein*, 142 Md. App. 259, 272, 790 A.2d 43, 51 (2002); *see L & L Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734, 737 (1967).

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 232 Md. App. 230, 235, 157 A.3d 331, 335 (2017); *see also Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 7, 98 A.3d 264, 268 (2014); *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006); *Towson Univ. v. Conte*, 384 Md. 68, 78, 862 A.2d 941, 946 (2004); *Lema v. Bank of Am., N.A.*, 375 Md. 625, 641, 826 A.2d 504, 513 (2003); *Under Armour, Inc. v. Ziger/Snead, LLP*, 232 Md. App. 548, 552, 158 A.3d 1134, 1136 (2017). This includes the determination of whether a contract is ambiguous. *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 163, 829 A.2d 540, 544 (2003).

"'The cardinal rule of contract interpretation is to give effect to the parties' intentions.'" *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 51, 73 A.3d 224, 232 (2013) (citation omitted). To determine the parties' intentions, courts look first to the written language of the contract. *Walton v. Mariner Health of Maryland, Inc.*, 391 Md. 643, 660, 894 A.2d 584, 594 (2006) ("[G]enerally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement."); *Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("[T]he court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated."), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).

As the Fourth Circuit stated recently, "Maryland adheres to the objective theory of contracts, 'giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean.'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, ____ F.3d ____, 2018 WL 1320589, at *4 (4th Cir. Mar. 15, 2018) (quoting *Conte*, 384 Md. at 78, 862 A.2d at 946-47); *see Cochran*, 398 Md. at 16, 919 A.2d at 709; *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014) (internal quotations and alteration omitted). The court's "task, therefore, when interpreting a contract, is not to discern the actual mindset of the parties at the time of the agreement." *Dumbarton*, 434 Md. at 52, 73 A.3d at 232. Rather, the court is to "'determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *General Motors Acceptance v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)).

As indicated, to determine the parties' intentions, courts first look to the written language of the contract. *See Walton*, 391 Md. at 660, 894 A.2d at 594. "'The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632-33 (2003) (citations omitted). A court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean. *See Dumbarton*, 434 Md. at 51, 73 A.3d at 232; *Dennis v. Fire & Police Employees Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *see also, e.g.*, *Scarlett Harbor,* 109 Md. App. at 291, 674 A.2d at 142 ("Where the language of a contract is clear, there is no room for construction; it must be presumed that the parties meant what they expressed.").

"In making this determination, courts should focus on 'the entire language of the agreement, not merely a portion thereof' and apply 'the customary, ordinary and accepted meaning of the language used.'" *Sky Angel*, 2018 WL 1320589, at *4 (quoting *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 952 A.2d 275, 283 (2008)). Moreover, a court will not "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *Brensdel v. Winchester Constr. Co.*, 392 Md. 601, 623, 898 A.2d 472, 485 (2006). Indeed, "[i]t is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods*, 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (*quoting Canaras v. Lift Truck Servs.*, 272 Md. 337, 350, 322 A.2d 866, 873 (1974)); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 1443 (Table),

1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.").

Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda,* 198 Md. App. 337, 17 A.3d 744, 749 (2011)). To "prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *accord Belyakov v. Med. Sci. & Computing*, 86 F. Supp. 3d 430, 437 (D. Md. 2015); *see also RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010). In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove*, 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005).

In *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland Court of Appeals said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (citation omitted) (emphasis in *Polek*); *see also Robinson v. GEO Licensing Co., L.L.C.*, 173 F. Supp. 2d 419, 423 (D. Md. 2001).

### III.    Motion for Surreply

CPG seeks leave to file a surreply (ECF 49), responding to Harleysville's Reply. ECF 45. CPG claims that Harleysville raised new arguments in its Reply concerning the scope of insurance coverage for various properties and buildings possessed by CPG. ECF 49-1 at 4-6. Accordingly, CPG maintains that it should have the right to respond to these arguments. *Id.*

Harleysville contends that its Reply only responded to arguments raised by CPG in its Opposition, and the CPG's surreply merely serves to confuse the issue of insurance coverage. ECF 52 at 4-6.

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. The filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), but they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g.*, *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). A surreply may be permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). However, a surreply is generally not permitted where the reply is merely responsive to an issue raised in the opposition. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003).

In this circumstance, a surreply is appropriate. To begin with, I agree that Harleysville's Reply raises, or substantially expands, arguments for the first time. Moreover, the Policy itself is complex, and Harleysville's attached excerpt of it constitutes a hefty 242 pages.[4] Accordingly, I shall grant the Motion for Surreply (ECF 49).

## IV.    Motion

### A.  Count 1

---

[4] Of note, the Policy, as attached to Harleysville's Motion (ECF 39-2), is not even the complete Policy. Harleysville wrote: "The portions related to Commercial Liability and Vendors have been redacted for the sake of the Court's file." ECF 39-1 at 25 n.4.

Harleysville moves to dismiss Count 1, for breach of contract, asserting that it is "inadequately pled." ECF 39-1 at 17. In particular, Harleysville contends that CPG "failed to provide some detail and certainty as to the nature of the contractual provisions that were allegedly breached." *Id.* Defendant quotes (*id.*) from a 2010 Maryland Court of Appeals case, *RRC Northeast, LLC v. BAA Maryland, Inc*., 413 Md. 638, 655, 994 A.2d 430, 440 (2010) (citation omitted), which states: "It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" From this, Harleysville urges this Court to conclude that CPG's "bald allegation that Harleysville had a contractual obligation to indemnify Class Produce's loss to its property . . . . is insufficient to state a claim without having pled the Policy terms and how those provisions of the policy were breached." ECF 39-1 at 18 (citation omitted).

I disagree. Maryland law does not require a plaintiff to cite a specific contractual provision to survive a motion to dismiss. To the contrary, the Court of Appeals said in *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658, 994 A.2d 430, 442 (2010) (citing *Taylor v. NationsBank, N.A*., 365 Md. 166, 175, 776 A.2d 645, 651 (2001)): "[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *See also Polek*, 424 Md. at 362, 36 A.2d at 416.

Moreover, courts in this District have not required plaintiffs to cite precise contractual provisions in order to state a claim for breach of contract under Maryland law. *See, e.g.*, *Hastings v. Ocwen Loan Servicing, LLC*, GLR-14-2244, 2015 WL 433712, at *5 (D. Md. Feb. 2, 2015) (denying a motion to dismiss where plaintiff did not "specify which clauses of the

Settlement Agreement were violated or when the breaches occurred"); *Arashteh v. Mount Vernon Fire Ins. Co.*, WDQ-13-2833, 2014 WL 3974172, at *4 (D. Md. Aug. 12, 2014) ("Whether the damage is covered by the terms of the Policy or whether the Defendant failed to fulfill an obligation to provide coverage under the Policy is yet to be determined. However, the Plaintiffs' allegations as to the contract's coverage and its breach are sufficient to state a claim."); *Day v. DB Capital Grp., LLC*, DKC 10-1658, 2011 WL 887554, at *15 (D. Md. Mar. 11, 2011) ("Here Plaintiff has pleaded the existence of a contract between himself and Russell Pettiford and that Mr. Pettiford breached the contract by failing to transfer back ownership of the D.C. property after one year. . . . These allegations are sufficient to maintain the breach of contract claim.").

Here, CPG has alleged that it has an insurance contract with Harleysville (ECF 38, ¶ 6), and that the Policy "indemnified CPG against loss for various covered perils occurring at its facilities." *Id.* Further, CPG has asserted that it suffered damage and loss due to a back-up in its sewer system. *Id.* ¶¶ 11-14. According to the Amended Complaint, "Harleysville undertook a contractual obligation to indemnify CPG for loss to its property caused by waste water backing up," and "[b]y refusing to indemnify CPG for its covered losses, Harleysville materially breached its contractual obligations." *Id.* ¶¶ 23-24.

Of relevance here, Harleysville does not argue in its Motion that it *did not* breach the contract, only that plaintiff has not adequately alleged that defendant breached the contract. Although it attached the Policy to its Motion, defendant does not refer to it in its argument for the dismissal of Count 1.

At this stage of the litigation, I must take all factual allegations in the Amended Complaint as true. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. I am satisfied that CPG

has alleged facts sufficient to support a claim for breach of contract.  Therefore, I shall deny the Motion as to Count 1.

### B.  Count 2

### 1.  Bad Faith/Good Faith

"Maryland does not recognize a specific tort action against an insurer for bad faith failure to pay an insurance claim." *Johnson v. Kemper Inc. Co.*, 74 Md. App. 243, 248, 536 A.2d 1211, 1212 (1988), *cert. denied*, 313 Md. 8, 542 A.2d 844 (Table) (1988); *see McCauley v. Suls*, 123 Md. App. 179, 187, 716 A.2d 1129, 1133 (1998); *see also Cecilia Schwaber Trust Two v. Hartford Acc. & Indem. Co.*, 636 F. Supp. 2d 481, 486 (D. Md. 2009); *Allstate Indem. Co. v. Parsons*, JKB-09-3411, 2010 WL 2163869, *3 (D. Md. May 26, 2010) ("'Bad faith' denial of an insurance claim is not a basis for a tort claim in Maryland by a first-party claimant against an insurer."); *Ming-Lewis v. Std. Fire Ins. Co.* CCB-05-1412, 2005 WL 1923155, *2 (D. Md. Aug. 10, 2005) ("[T]here is no tort action for the bad faith failure of an insurer to pay a first party claim."); *Snyder v. Chester County Mut. Ins. Co.*, 264 F. Supp. 2d 332, 340 (D. Md. 2003) ("An insured may not bring a bad faith claim against an insurer for refusal to perform under a contract.").

However, failure to act in good faith in denying insurance coverage, under C.J. § 3-1701 and its companion, Ins. § 27-1001, is a State statutory cause of action created in 2007.  *See* 2007 Md. Laws, ch. 150.  Taken together, the two statutes require an insurer to make "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."  C.J. § 3-1701(a)(5); Ins. § 27-1001(a) (same). The statutes authorize a cause of action against an insurer that fails to act in good faith in denying coverage, and authorize the insured to recover "actual damages," up to the

limits of the applicable insurance policy, along with attorneys' fees, expenses, other litigation costs, and interest.  C.J. § 3-1701(e).

A claim under C.J. § 3-1701 is ordinarily subject to an administrative exhaustion requirement with the MIA.  *See* C.J. § 3-1701(c)(1); *see also* Ins. § 27-1001(c)-(g).  However, there is an exception to the exhaustion requirement for claims on a "commercial insurance policy . . . with respect to which the applicable limit of liability exceeds $1,000,000."  C.J. § 3-1701(c)(2)(iii).  CPG claims this exception applies here.

Harleysville contends that CPG's claim under C.J. § 3-1701 fails for three reasons.  First, Harleysville argues, ECF 39-1 at 19: "To the extent that Plaintiff is attempting to assert claims for 'bad faith,' as a form of tort claim, those claims must be dismissed as such a claim is not legally cognizable under Maryland law."  Second, Harleysville asserts that CPG's Amended Complaint is subject to dismissal because it fails to adequately allege facts suggesting that that Harleysville did not act in good faith.  *Id.* at 20-23.  Third, it maintains that CPG has failed to exhaust its administrative remedies, and cannot avail itself of any of the exceptions to the administrative exhaustion requirement.  *Id.* at 23-26.

### 2. Nature of the Claim

Defendant argues that Count 2 is subject to dismissal because Maryland does not recognize a claim against an insurer for bad faith refusal to pay a claim.  Although legally correct as a general proposition, the contention is unavailing here.  Plaintiff expressly relies on C.J. § 3-1701 as the basis for the claim in Count 2.  ECF 38, ¶ 27.  Moreover, CPG asserts that defendant had a duty "to investigate in good faith" and "breached its duty."  *Id.* ¶¶ 27, 28.

To be sure, the title of the claim refers to "bad faith" and not "good faith.  But, the title of the count does not control.  It is the content that matters.  *See All Class Const., LLC v. Mut. Ben.*

*Ins. Co.*, 3 F. Supp. 3d 409, 420 (D. Md. 2014). The content makes plain that plaintiff asserts a statutory claim against the insurer, charging lack of good faith. Defendant's contention that Count 2 is subject to dismissal because it is a claim for bad faith refusal to pay is specious.

### 3. Failure to State a Claim

Although CPG has endeavored to assert a claim for lack of good faith, the allegations are insufficient to state such a claim.

"Cases construing section 3-1701's good-faith standard are sparse." *All Class Const., LLC*, 3 F. Supp. 3d at 416. But, on multiple occasions, judges in this District have adopted a "totality of the circumstances" test. *See Barry v. Nationwide Mut. Ins. Co.*, JKB-17-3070, 2018 WL 724068, at *3 (D. Md. Feb. 6, 2018) (quoting *All Class Const., LLC*, 3 F. Supp. 3d at 416); *see also Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 636 F. Supp. 2d 481, 486-87 (D. Md. 2009). That test includes the following factors, *Barry*, 2018 WL 724068, at *3:

> [ (1) ] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [ (2) ] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [ (3) ] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

An evaluation of whether an insurer investigated a claim in good faith "'requires, for example, an evaluation of the insurer's efforts to obtain information related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available.'" *All Class Const., LLC*, 3 F. Supp. 3d at 416 (quoting *Celia Schwaber*, 636 F. Supp. 2d at 487). And, notably, "the determination as to good faith focuses on the time at which the insurer's decision was made, not at a later point in subsequent litigation when all involved have the benefit of additional evidence." *Id.* (quoting *Celia Schwaber*, 636 F. Supp. 2d at 487-88).

CPG has alleged only conclusory allegations concerning Harleysville's failure to investigate the claim in good faith. CPG merely states that Harleysville "fail[ed] to properly investigate CPG's claim, by failing to reconsider its blanket coverage denial when presented with additional information, and by consistently relying on an improper and incomplete coverage denial." ECF 38, ¶ 28. These allegations are insufficient to state a plausible claim. For one, the failure of defendant to "reconsider its blanket coverage denial when presented with additional information," even if taken as true, is insufficient to support a claim for lack of good faith. Indeed, "the fact that . . . plaintiffs [are] unable to persuade the insurer to change its mind does not mean that the insurer failed to act in good faith." *All Class Const., LLC*, 3 F. Supp. 3d at 417 (citing *Millennium Inorganic Chemicals Ltd. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 893 F. Supp. 2d 715, 740-41 (D. Md. 2012), *rev'd on other grounds*, 744 F.3d 279 (4th Cir. 2014)).

And, although CPG alleges an "improper and incomplete coverage denial," it does not offer any factual basis for this allegation or even explain what it means by "improper and incomplete." Plaintiff makes no contention that, at "the time at which the insurer's decision was made," Harleysville had not been diligent in its investigation of the claim. To the contrary, as evidenced by the Denial Letter that CPG received from defendant, the Harleysville adjuster retained an independent inspector, Dave Blanch of Crawford and Company, to inspect the property with CPG on October 17, 2013. *See* ECF 2-1 at 1. In Blanch's view, the drain size was inadequate to handle the volume of waste water. *Id.* at 3-4. Based on this assessment, Harleysville concluded that the loss resulted from "defects, errors, or omissions in property" (*id.*), which were excluded under the Policy, and it denied coverage.

In its Opposition, CPG asserts that Harleysville relied on the wrong section of the Policy, and cites to a subsequent letter it sent to Harleysville on May 20, 2016. ECF 42 at 18; ECF 2-4 (May 20, 2016 letter). That letter discusses how, according to CPG, the loss from the Sewer Line Back-Up was caused by "hidden, latent defects" in the Warehouse's sewer line. ECF 2-4 at 4. But, as noted, the fact that the problem resulted from a "defect" was the very reason Harleysville denied coverage. ECF 2-1 at 3-4. CPG cannot fairly assert that its claim was denied due to a lack of good faith when the documents it attached to its Complaint suggest that the investigation specifically considered CPG's proffered basis for coverage and rejected it. The mere fact of the parties' disagreement does not constitute a lack of good faith.

Because CPG has pleaded no facts that would support a lack of good faith in Harleysville's investigation and denial of its claim, the claim must be dismissed.

### 4. The Exhaustion Requirement

Even assuming that plaintiff stated a statutory claim under C.J. § 3-1701 and Ins. § 27-1001, the claim is subject to dismissal for failure to exhaust administrative remedies.

A claim under C.J. § 3-1701 is ordinarily subject to administrative exhaustion. *See* C.J. § 3-1701(c)(1); Ins. § 27-1001(c)-(g). The latter statute states, Ins. § 27-1001(d)(1): "A complaint stating a cause of action under § 3-1701 of the Courts Article shall first be filed with the [Maryland Insurance] Administration."

However, as stated, an exception applies to claims on a "commercial insurance policy . . . with respect to which the applicable limit of liability exceeds $1,000,000." C.J. § 3-1701(c)(2)(iii); Ins. § 27-1001(c)(2)(iii). The question here is whether the "applicable coverage limit" for CPG's claim exceeds $1,000,000. If the applicable coverage limit does not exceed

$1,000,000, then the claim would be subject to dismissal.  *See, e.g.*, *Carlyle v. Travelers Home & Marine Ins. Co.*, WDQ-13-2964, 2014 WL 2573381, at *3-4 (D. Md. June 5, 2014).

Of course, simply because exhaustion is an element of a claim does not mean that its absence deprives a court of subject matter jurisdiction.  The Supreme Court has acknowledged, *Arbaugh v. Y & H Corp.* 546 U.S. 500, 511 (2006): "On the subject-matter jurisdiction/ ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous." Accordingly, to "ward off profligate use of the term 'jurisdiction,'" the Supreme Court has adopted a "readily administrable bright line for determining whether to classify a statutory limitation as jurisdictional."  *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) (citations omitted).  "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh*, 546 U.S. at 515-16 (internal citations omitted).  *See also Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 507 (4th Cir. 2015).

Judge Chuang of this Court recently considered the question of whether exhaustion is jurisdictional in the context of C.J. § 3-1701.  *See Jackson v. Standard Fire Ins. Co.*, TDC-17-1612, 2018 WL 348148, at *3 (D. Md. Jan. 9, 2018).  He observed that "this provision falls within Title 3 of the Courts and Judicial Proceedings Article of the Maryland Code, which is entitled 'Courts of General Jurisdiction—Jurisdiction/Special Causes of Action.'"  *Id.*  Therefore, he concluded that "the Maryland legislature has expressed its intent that this exhaustion requirement constitute not merely an element of a claim, but a jurisdictional prerequisite to the

presentation of such a claim in a Maryland court." *Id.* I see no reason to diverge from Judge Chuang's determination, and the parties have offered none.

CPG alleges, and Harleysville does not deny, that CPG's Policy has a total limit for property coverage of more than $1,000,000 (ECF 38, ¶ 6; *see* ECF 39-1 at 25). In its Opposition, CPG suggests that the proper coverage limit is the total amount of "Building Property coverage," which it asserts is $15,750,584. ECF 42 at 13-14; ECF 39-2 at 18. However, Harleysville contends that the *applicable* coverage limit is far less than $1,000,000. ECF 39-1 at 25.

Harleysville maintains that CPG did not have Building Property coverage for the Warehouse under the Policy. *Id.* It acknowledges that on the "Location Schedule" in the Policy (ECF 39-2 at 4), the Warehouse is listed as Premises No. 004. However, on the "Commercial Output Coverage Part Blanket Schedule" (ECF 39-2 at 22), three locations are listed in a matrix along with their "Limits of Insurance." Three Limits of Insurance are given for each location, *id.*: "Bldg." (which Harleysville maintains corresponds to "Building Property coverage"); "BPP" (which Harleysville asserts is "Business Personal Property" coverage); and "Income Coverage."

Defendant observes that, although Loc. 004 (asserted to be the Warehouse) has a Limit of Insurance for "BPP" and "Income Coverage," no such amount is listed under "Bldg." *Id.*; ECF 39-1 at 25. A note on the Commercial Output Coverage Part Blanket Schedule (ECF 39-1 at 22) states: "COVERAGES PROVIDED: Insurance at the described premises applies only for coverages for which a limit of insurance is shown or for which an entry is made, unless otherwise indicated."

On this basis, Harleysville contends that the Warehouse had no Building Property coverage, and therefore the $15,750,584 limit is not applicable. Instead, Harleysville avers that CPG's applicable coverage limit is restricted to the Supplemental Coverages it purchased. ECF

39-1 at 24. In particular, it appears that two such Supplemental Coverages would be relevant: "Sewer Backup and Water Below the Surface," which has a $25,000 limit, and "Underground Pipes, Pilings, Bridges, and Roadways," which has a $250,000 limit. ECF 39-2 at 18-19. Because, even if aggregated, these two coverage limits would be well below $1,000,000, Harleysville insists that the exemption to the C.J. § 3-1701 exhaustion requirement does not apply. ECF 39-1 at 25-26.

I agree with Harleysville's construction of the Policy and the applicable limits. To be sure, the fact that the Warehouse is listed on the Location Schedule, but has no Building Property coverage, is initially confusing. But, it is explained by the fact that the Warehouse has BPP and Income coverage, and so is a "covered property" in that sense. Moreover, as Harleysville points out, it is unsurprising that the Warehouse lacks Building Property coverage because CPG leases the Warehouse; it does not own it. *See* ECF 38, ¶ 8; ECF 39-1 at 26.[5] And, Harleysville adds in a footnote that the limit of $15,750,584 asserted by CPG is simply the sum of the Building Property coverage apportioned to the two other locations on the Commercial Output Coverage Part Blanket Schedule. ECF 39-1 at 26 n.5. Location 001 has a limit of $11,657,856, and Location 002 has a limit of $4,092,728. *See* ECF 39-2 at 22. According to Harleysville, this is not a coincidence, and all of CPG's Building Property coverage is allocated to locations other than the Warehouse. ECF 39-1 at 26 n.5.

CPG makes two relevant arguments in response, both of which are unavailing. First, CPG asserts that it "is not making a claim for loss to the Warehouse Building that is Premises No. 004. CPG is making a claim for loss resulting from it having to Remediate the conditions causing the covered peril, the Sewer Line Back-Up." ECF 42 at 14. I take CPG to mean that

---

[5] CPG does not allege that, under its lease, it is liable for such occurrences or any necessary repairs.

rather than seeking reimbursement for its *loss in value*, CPG seeks indemnification for its *costs of repair*. Even so, it appears that this would fall under the category of Building Property coverage, and not BPP or Income coverage, which are the two alternatives.

Second, CPG contends that the Warehouse must be a "covered location" because it was added to the property and casualty policy, and its addition "increased the premium Harleysville collected for this increased coverage." *Id.* at 15. CPG charges that Harleysville's argument that the Supplemental Coverages are applicable but "Remediation" costs are not is "nonsensical." *Id.* Clearly, however, the Warehouse can be a "covered location" without necessarily having the same type and degree of coverage as other "covered locations." In the Policy, "Covered location" is defined as "any location or premises where 'you' have buildings, structures, or business personal property covered under this coverage." ECF 39-2 at 57. The Warehouse *was* a covered location, because it had Business Personal Property covered there. *See id.* at 22. But, it appears that the Warehouse had no building property coverage. *Id.*

It is unclear whether the Supplemental Coverages, including the "Sewer Backup and Water Below the Surface" and "Underground Pipes, Pilings, Bridges, and Roadways" coverages, with limits of $25,000 and $250,000, respectively, apply to the Warehouse, even though that location is not covered by Building Property insurance. The Supplemental Coverages are listed separately from the Property Coverage Part on the Schedule of Coverages (ECF 39-2 at 18-19), and Harleysville's Motion appears to concede to some degree that these coverages are applicable. *See* ECF 39-1 at 24. In any case, because the applicable coverage limit is less than $1,000,000, CPG was not exempt from the requirement that it first present its claim to the MIA.

### V.    Conclusion

For the foregoing reasons, I shall GRANT the Motion in part and DENY it in part.  I shall

DENY the Motion as to Count 1, and GRANT it as to Count 2, without prejudice.  And, I shall

GRANT the Motion for Surreply.  An Order follows, consistent with this Memorandum Opinion.


Date: March 23, 2018                                    _____/s/_____

                                                        Ellen Lipton Hollander
                                                        United States District Judge