# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CLASS PRODUCE GROUP, LLC,** | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-16-cv-3431 |
| **HARLEYSVILLE WORCESTER INSURANCE COMPANY,** | * |
| Defendant. | * |

## MEMORANDUM AND ORDER

Plaintiff Class Produce Group, LLC ("CPG") brought this action against Defendant Harleysville Worcester Insurance Company ("Harleysville"), alleging that Harleysville failed to indemnify CPG pursuant to an insurance contract, and failed to pay CPG's insurance claim. [ECF 38]. The parties consented to proceed before a magistrate judge. [ECF 68]. Presently pending is CPG's Motion for Leave to File a Second Amended Complaint, [ECF 89], and Harleysville's Opposition, [ECF 92]. CPG did not file a Reply. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons set forth herein, CPG's Motion for Leave to File a Second Amended Complaint will be DENIED.

## I. BACKGROUND[1]

CPG operates a business that processes produce and resells the produce to customers and end users. [ECF 38, ¶ 7]. Harleysville sold CPG a Commercial Lines Insurance Policy (the "Policy"), which indemnified CPG against "loss for various covered perils occurring at its facilities." *Id.*, ¶ 6. The limit of insurance for property coverage under the Policy exceeds $1

---

[1] The factual allegations are derived from the Amended Complaint, [ECF 38].

million. *Id.* On September 14, 2012, CPG leased warehouse space located at 8441 Dorsey Run Road, Jessup, Maryland (the "Warehouse"). *Id.*, ¶ 8.

On September 23, 2013, the Warehouse flooded because of a sewer line back-up. *Id.*, ¶ 11. CPG contends that the flooding was a result of "hidden, latent defects," namely drainage pipes that were the wrong diameter and were "old and dilapidated," sump pumps that were "old, undersized, dilapidated, and worn out," and grease traps that were clogged with grease. *Id.*, ¶¶ 10-11. CPG alleges that it spent a total of $338,475.42 to investigate and repair the sewer line back-up and to install temporary water drainage facilities. *Id.*, ¶¶ 12-13. CPG also alleges that it spent $7,800.00 to clean up and restore the flooded space leased by its neighboring tenant. *Id.*, ¶ 14.

On October 11, 2013, CPG sought indemnification from Harleysville under the Policy. *Id.*, ¶ 15. Harleysville denied coverage. *Id.*, ¶ 16; *see also* [ECF 89-2] (letter dated October 23, 2013, from Harleysville denying coverage). After several attempts by CPG in 2015 and 2016 to persuade Harleysville to reconsider its denial, on August 15, 2016, CPG filed suit in the Circuit Court for Howard County against Harleysville. [ECF 2, 38 ¶¶ 18-21]. Harleysville timely removed the case to this Court on October 12, 2016, based on diversity of citizenship. [ECF 1]; 28 U.S.C. § 1332. On May 31, 2017, Judge Hollander granted CPG's Motion for Leave to File a First Amended Complaint. [ECF 36].

CPG's First Amended Complaint added three factual allegations: (1) the limit of insurance for property coverage under the Policy exceeds $1 million; (2) CPG paid $7,800 to clean up and restore the neighboring tenant's property; and (3) an allegation citing to the particular contractual provision of the Policy at issue. *Id.* at 6. Judge Hollander deemed these amendments "relatively minor," and found no reason not to allow CPG to amend its Complaint

accordingly. *Id.* at 6-18. On June 19, 2017, Harleysville filed a Motion to Dismiss CPG's Amended Complaint, [ECF 39], which Judge Hollander granted in part and denied in part. [ECF 54]. Judge Hollander dismissed Count II of CPG's Amended Complaint, a claim for bad faith failure to pay an insurance claim. *Id.* at 19-28.

On May 16, 2018, Judge Hollander issued a Scheduling Order, setting a deadline of July 16, 2018 for amendment of pleadings. [ECF 62]. The parties have since engaged in discovery efforts, including filing CPG's Rule 26(a)(2) disclosures, serving written discovery, and producing documents. On September 10, 2018, this Court held a telephonic conference to address discovery and scheduling issues. As a result of that conference, this Court issued an Amended Scheduling Order, setting a discovery deadline of December 24, 2018. [ECF 79].

CPG first moved to file a Second Amended Complaint on August 17, 2018, to add claims related to a separate "umbrella policy." [ECF 72]. After Harleysville submitted an opposition on August 31, 2018, [ECF 73], CPG withdrew its motion on September 17, 2018. *See* [ECF 83]. On September 25, 2018, CPG filed the instant motion for leave to file a Second Amended Complaint in order to clarify its obligation under the lease for the flooded Warehouse. [ECF 89]. Specifically, CPG seeks to add the following allegations: (1) "The Lease was defined as 'Business Personal Property' under the Policy."; (2) "CPG's Lease required that CPG remediate, repair and clean up any damage caused by its operations in its leased space, and indemnify its landlord for any resulting loss. CPG's Lease obligation included remediating the conditions causing damage, if these conditions, when combined with CPG's operations, including its extraordinary waste water discharge, would cause damage."; and (3) "CPG had to repair the resulting damage and remediate the conditions causing it, or face eviction and loss of valuable rights under the Lease which would have exceeded the costs of remediation and repair." [ECF

89-7]. In addition, CPG seeks to modify an allegation in paragraph 11 to read: "On September 23, 2013, CPG's intensive use of its leased premise stressed the latent, hidden defects, and caused waste water to back up in the Warehouse Sewer System and into the Warehouse and its surrounding areas, causing CPG and the other tenant in the Warehouse damage and loss." *Id.*

In the Second Amended Complaint, CPG also seeks to remove the claim of bad faith failure to pay an insurance claim, which Judge Hollander had dismissed, [ECF 54]. *See* [ECF 89-7]. Harleysville opposes CPG's motion, citing undue delay, prejudice, and futility. [ECF 92]. CPG did not file a Reply.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 provides that a party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)(B). The Rule requires courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has liberally construed this standard, such that leave to amend should be denied only if prejudice, bad faith, or futility is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (interpreting *Foman v. Davis*, 371 U.S. 178 (1962)); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012).

Nonetheless, "[u]nder Rule 15(a), the district court has 'broad discretion concerning motions to amend pleadings[.]' … A district court may deny a motion to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment or futility of the amendment.'" *Griaznov v. J-K Technologies, LLC*, 2017 WL 915000, at *3 (D. Md. Mar. 8, 2017) (citing *Booth v. Maryland*, 337 Fed. App'x 301, 312 (4th Cir. 2009) (per curiam) (quoting *Foman*, 371 U.S. at 182)).

## III. DISCUSSION

CPG argues that granting it leave to file a Second Amended Complaint would not be prejudicial or futile because "CPG is merely clarifying its position, under which it seeks to recover," and that "[n]o new theories or facts are being alleged." [ECF 89-1 at 4-5]. Harleysville opposes CPG's Motion to Amend, arguing that the amendments are prejudicial, causing undue delay and "added unnecessary expense" in "refiling motions, oppositions and replies," and that the amendment related to the Lease being "Business Personal Property" should be denied as futile. [ECF 92 at 8-12].

CPG's Motion to Amend is undeniably untimely, coming six months after Judge Hollander's Opinion granting in part and denying in part Harleysville's Motion to Dismiss the First Amended Complaint, well beyond the July 16, 2018 deadline for amendment set in the scheduling order, and when the discovery deadline is just weeks away. *See* [ECF 54, 62, 79]. However, "[t]he Fourth Circuit has held . . . that delay alone is not sufficient reason to deny leave to amend. The delay must be accompanied by prejudice, bad faith, or futility." *Johnson*, 785 F.2d at 509-10 (citations omitted); *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (same). Here, I find that granting CPG's Motion to Amend would not only cause undue delay, but it would also be prejudicial.

### A. Prejudice

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE (2004 & 2015 Supp.) ("Wright & Miller"), § 1487 at 701 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310

5

(1960)). The burden of showing prejudice falls on "[t]he party opposing amendment." *Atlantic Bulk Carrier Corp. v. Milan Exp. Co.*, 3:10-cv-103, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). As the Fourth Circuit explained in *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), "[w]hether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.… [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant…'" (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc)) (alteration in *Laber*).

Prejudice can be found "where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] … the amendment is offered shortly before or during trial." *Johnson*, 785 F.2d at 510 (citations omitted). In contrast, "[a]n amendment is not prejudicial … if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. Thus, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." Wright & Miller, § 1487 at 701.

While CPG's proposed amendments do not come shortly before or during trial, they do come well into the discovery period. In addition, CPG has already amended its Complaint once before and has previously attempted to amend it a second time, all of which caused Harleysville to expend resources filing its oppositions. *See* [ECF 38, 72, 73, 83].

Allowing an additional amendment over Harleysville's objection would likely trigger a new round of motions practice during what should be the final few weeks of discovery. CPG argues that the addition of the lease requirements to the Complaint does not prejudice

Harleysville because Harleysville "has had a copy of the lease for some time, so it cannot come as a surprise." [ECF 89-1 at 5]. Harleysville argues that CPG's proposed amendments are "improper alterations of judicial admissions that are binding and should control the litigation." [ECF 92 at 9]. Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)). "Judicial admissions can be affirmative statements that a fact exists and they can also 'include intentional and unambiguous waivers the release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law.'" *Davis v. Complete Auto Recovery Servs., Inc.*, JKB-16-3079, 2017 WL 6501761, at *2 (D. Md. Dec. 18, 2017) (quoting *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264-65 (4th Cir. 2004)).

The additional allegations regarding CPG's Lease are not mere "clarifications," as CPG intends to portray them. CPG seeks to assert its obligations under its Lease, which, notably, was not attached to either of the Complaints. [ECF 2 38]. Specifically, CPG's proposed amendments regarding the Lease state, "CPG's Lease required that CPG remediate, repair and clean up any damage caused by its operations in its leased space" and "CPG's Lease obligation included remediating the conditions causing damage, if these conditions, when combined with CPG's operations, including its extraordinary waste water discharge, would cause damage." [ECF 89-7 at 3]. CPG also seeks to add, "CPG had to repair the resulting damage and remediate the conditions causing it, or face eviction and loss of valuable rights under the Lease which would have exceeded the costs of remediation and repair." *Id.* at 4. Despite underscoring that Harleysville's counsel has had a copy of the Lease "for some time," CPG offers no explanation for its own untimely amendments. *See* [ECF 89-1 at 5]. Instead, CPG cites Judge Hollander's

7

opinion granting CPG's Motion to File a First Amended Complaint as supporting the importance of the Lease to the resolution of the case. [ECF 89-1 at 5 (citing ECF 54 at 26)]. In fact, Judge Hollander noted that "CPG does not allege that, under its lease, it is liable for such occurrences or any necessary repairs." [ECF 54 at 26 n.5]. CPG now seeks to allege that it *is* liable for the costs of remediation and repair. [ECF 89-7 at 4]. As noted above, the Lease was not attached to either Complaint as an exhibit, and CPG may not now change its allegations regarding its obligations under the Lease. Thus, allowing CPG's proposed amendments regarding its Lease at this stage in the litigation would be prejudicial to Harleysville.

The proposed amendments regarding CPG's Lease are not the only amendments that prejudice Harleysville. Of additional concern is CPG's new allegation that "[t]he Lease was defined as 'Business Personal Property' under the Policy." *See* [ECF 89-7]. This allegation appears to be a conclusory statement interpreting coverage under the Policy that was not raised in CPG's original Complaint or its First Amended Complaint. *See* [ECF 2, 38]. Indeed, the Policy itself was not attached as an exhibit to either Complaint, though portions of it were attached as an exhibit to Harleysville's Motion to Dismiss CPG's First Amended Complaint. *See* [ECF 39-2].

The Policy at issue defines "Business Personal Property" as a Policyholder's "business personal property in buildings or structures at a 'covered location' or in the open (or in vehicles) on or within 1,000 feet of a 'covered location,'" and includes a Policyholder's "use interest as a tenant in improvements to the buildings or structures" and "leased personal property which [the Policyholder] ha[s] a contractual responsibility to insure." [ECF 39-2 at 62]. Harleysville cites *Nationwide Mutual Insurance Company v. Regency Furniture, Inc.*, 183 Md. App. 710, 729-30, 963 A.2d 253, 264 (2009), where the Maryland Court of Special Appeals found that "'Business

Personal Property located in or on the building[s]'…is any *thing* on or in the building." In deciding whether an insurance policy covered the replacement of damaged HVAC units under its "Business Personal Property" coverage, the Court of Special Appeals also noted that "it is not a requirement, generally, that, for an item to be 'Business Personal Property,' it must not be real property," but that when real property is specifically included under "Business Personal Property," its "inclusion does not modify, generally, the meaning of 'personal property'…so as to qualify any item of real property as an item of personal property, for purposes of coverage." *Regency Furniture*, 183 Md. App. 710 at 730, 963 A.2d at 264.

Harleysville contends that CPG has not alleged that the Lease was a "thing that was in the building that was in some fashion destroyed." [ECF 92 at 10-11]. As *Regency Furniture* suggests, the allegation that CPG's Lease is "Business Personal Property" is a factual and legal issue, subject to different interpretations. Accordingly, CPG effectively seeks to introduce a new legal theory, which may require gathering and analyzing facts relating to the Policy at issue. Importantly, CPG offers no explanation for why it did not make this allegation in a timely fashion. Therefore, given the posture of the case and the nature of the proposed amendments, I find that granting CPG leave to file a Second Amended Complaint would be prejudicial to Harleysville.

### B. Futility

Harleysville also argues that CPG's proposed amendment regarding the Lease being "Business Personal Property" should be denied as futile. [ECF 92 at 10]. According to Harleysville, CPG "has not shown facts which would demonstrate that the Lease was 'Business Personal Property' under the Policy." *Id.* Harleysville argues, "[t]he Court should deny [CPG's]

9

request to add conclusory statements about coverages asserted that are not borne out by the facts provided." *Id.*

An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citations omitted); *see also* Wright & Miller, § 1487 at 732-740 ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied.") (footnotes omitted). The review for futility "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, … conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 26, 65 L.Ed.2d 1141 (1980)). Leave to amend may be denied if a proposed amendment would not survive a motion to dismiss. *See, e.g.*, *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

Ultimately, because I am denying CPG's motion on the basis of delay accompanied by prejudice, I need not reach the question of whether CPG's interpretation of the Policy at issue is "so clearly insufficient or frivolous on its face as to be futile." *See Brightwell v. Hershberger*, DKC-11-3278, 2015 WL 5315757, at *5 (D. Md. Sept. 10, 2015).

**CONCLUSION**

For the reasons explained herein, Plaintiff's Motion for Leave to File a Second Amended Complaint, [ECF 89], is DENIED.

Dated: November 5, 2018

/s/
Stephanie A. Gallagher
United States Magistrate Judge